# CHARLES ETTENSON v. WABASH RAILROAD COMPANY, Appellant.

**Division Two, March 12, 1913. ***

1. **RESERVATION AS TO STREET RAILWAY: Conveyance of Reservation: Authority of Railroad to Use.** Where plaintiff's grantor dedicated the streets and alleys of a town to public use forever "save and except the right of way for the street railroads," a deed thereafter from said grantor purporting to convey to a railroad company the right of way reserved at the time the streets were dedicated, was not sufficient to authorize such company or its grantee to construct and operate a steam railroad on said streets. The court takes judicial notice that there is such a wide difference between street railroads and steam railways that a grant of a right of way for street railroads would not authorize the construction of a steam railroad.

2. **RAILROAD: Donation of Land for Depot and Tracks: Binding on Grantee: Estoppel.** The owner of land having donated to defendant railroad company a site for its depot, and its main track having been constructed in the street on which his lots abut with his consent and approval, the subsequent grantee of such owner cannot be heard to urge the removal of either the depot or track.

3. ————: **Removal of Track in Street: Constructed After Plaintiff Acquired Property: Interference with Travel.** The construction in a public street of a railroad track, after plaintiff had acquired the abutting lots, at places three and a half feet above the grade, at other places in open cuts below the grade, and so constructed as to prevent travel with vehicles on one-half the street, materially depreciates the market value of the lots, and being constructed without authority the court should prohibit the use or maintenance of the track; and the city had no authority to donate the street for a switch yard, nor the railroad company to receive or appropriate it for that purpose, to the injury of an abutting owner.

4. ————: ————: ————: **Laches: No Injury.** The construction of an inexpensive depot after defendant had laid a switch track within three feet of plaintiff's lots, whose use is not indispensably connected with the depot, and where there is no proof that the depot was constructed under the belief that defendant

———
*Note.—Decided December 31, 1912. Motion to transfer to Court in Banc overruled March 12, 1913.

Ettenson v. Railroad.

would be permitted to permanently use and maintain the track, does not bar, on account of laches, a suit begun by the owner of the lots four years after the switch track was laid, to have it removed as a permanent injury to his lots, in depriving him of access thereto. A delay of four years did not mislead defendant to its injury.

5. ———: ———: ———: ———: Presumption. Nor can it be presumed that defendant believed plaintiff would suffer said switch to remain where it was placed, since the use of a public street for storing or unloading cars is *prima-facie* illegal.

6. ———: Making up and Breaking up Trains in Street: Estoppel: Increase After Purchase of Lots. The facts that defendant railroad company's main track was constructed in the street in front of the lots at a time when they were unimproved, with the consent and approval of plaintiff's grantor, and that at the time plaintiff bought the lots the track was being used for making up and breaking up trains, do not estop plaintiff from obtaining relief against the making up and breaking up of trains, and storing, loading and unloading cars in front of his property, where the use of the street for such purposes has greatly increased and a great many more trains are being made up and broken up and the number of cars being loaded and unloaded has increased to such a number as to indicate a radical change in the situation.

7. ———: ———: ———: ———: Admitted by Abandoned Petition. Statements and allegations contained in abandoned pleadings are competent evidence against the party making them, in another suit. An abandoned petition filed in the circuit court by defendant railroad company for the purpose of having plaintiff's lots condemned for switching and other tracks, in which it is alleged that defendant's business has grown to such an extent that it needs a private switch yard in which to make up and break up trains, and store, load and unload cars, although the proceeding was abandoned, is admissible as an admission against defendant in a suit by the owner of those lots for relief against the making up and breaking up of trains on the street in front of them, and also as an admission that its business has so grown as to make such private switch yard necessary.

8. ———: Right to Street: Right to Receive and Discharge Passengers. Where the defendant railroad company is entitled to operate cars on its main track in the street upon which plaintiff's lots abut, it has the right to receive and discharge passengers at its depot located on said street. That would not materially injure his lots, even for residence purposes.

9. ———: Tracks in Street: Restoring Street to Former State. Where defendant railroad company in a lawful manner got its tracks into a public street, but after constructing them therein,

Ettenson v. Railroad.

above and below the grade, has neglected to restore the street to its former state, or to such a state as does not impair its usefulness, a plaintiff who subsequently purchased lots abutting in the street wherein such tracks were previously laid, can compel defendant to restore the street to its former state, as required by Sec. 3049, R. S. 1909. Defendant could not from any source have procured the right to lay its tracks above or below the grade of such street in such a way as to needlessly interrupt or obstruct the public travel thereon.

10. ————: Tracks in Street Above or Below Grade: Continuing Nuisance: Limitations: Estoppel. In laying its tracks above and below the natural grade of a public street, and in neglecting to construct crossings over its tracks so that the public could pass over them in safety, a defendant railroad company is guilty of maintaining a continuing public nuisance, and its acts in that regard cannot ripen into legality by the lapse of time or the acquiescence of an abutting owner.

11. ————: ————: Restoration: Reasonable Compliance. A railroad company cannot literally restore a public street in which it had laid its tracks to its former state; but it must be restored to such a condition as will reasonably accommodate the public travel over and across the street, and afford an abutting lot owner ingress and egress. Each case must be governed by its own facts.

12. ————: ————: ————: Injunction: Relief: Remitted to Mandamus for Relief. Where the suit was not tried as a mandatory injunction to compel the railroad company to restore the street, in which it had laid its tracks, to its former state, and the evidence does not reveal what plan of restoration would be feasible, but the suit was brought to obtain injunctive relief against the use and maintenance of unauthorized tracks and the making and breaking up of trains in the street, the plaintiff will be awarded injunctive relief so far as he is entitled to it, and will be remitted to an action of mandamus to compel the restoration of the street to such a condition as will protect his property rights. A property owner and taxpayer is entitled to maintain mandamus for that purpose.

Appeal from Clay Circuit Court.—*Hon. Francis H. Trimble*, Judge.

REVERSED AND REMANDED *(with directions)*.

*J. L. Minnis, Cravens & Moore*, and *Sebree, Conrad & Wendorff* for appellant.

(1) The plaintiff is estopped from obtaining the relief sought in this case by reason of the acts of his

grantors in consenting to and really causing the rail-
road tracks to be laid in the streets in front of the
property for railroad purposes, and in donating the
ground for the roundhouse, stockyards and depot, and
they and plaintiff, by their laches, in consenting to
and acquiescing in the occupancy of the streets by the
railroad tracks and the operation of the railroad for
a great number of years without any objection or at-
tempt to prevent such operation or the expending of
large sums of money in purchasing the railroad prop-
erty and extending the same to Wabash Junction, the
laying of additional sidetracks and building the depot
and roundhouse.  By the acts, consent, acquiescence
and laches of the plaintiff and his grantors the plain-
tiff is estopped to have the relief he seeks. De Geofroy
v. Bridge Terminal Co., 179 Mo. 705; Rourke v. Rail-
road, 221 Mo. 60; Hubbard v. Slavens, 218 Mo. 621;
Roberts v. Railroad, 158 U. S. 1; Joyce v. Growney, 154
Mo. 263; 1 High on Injunctions (3 Ed.), secs. 7, 618;
Property, etc., Co. v. Railroad, 115 Mo. 613; Osborne v.
Railroad, 37 Fed. 830; Dodd v. Railroad, 108 Mo. 585;
Merchants Company v. Railroad, 79 Iowa, 613; Rail-
road v. Strauss, 37 Md. 241; Burkam v. Railroad, 122
Ind. 344; Porter v. Railroad, 125 Ind. 476; Good v. Fire
Brick Co., 224 Pa. 496; Wolford v. Fisher, 84 Pac.
850; Duffy v. Mayor, 79 Atl. 603; Railroad v. John-
son, 90 N. E. 507.   (2)  The right of access to and
from the streets to abutting lots is an easement and as
much property as the lots themselves, and when taken
or interfered with by permanent fixtures or conditions
in the street a cause of action for compensation at
once accrues, and the Statute of Limitations begins
to run.  The ten year Statute of Limitations had run
in this case; for more than fifteen years had elapsed
from the time most of the tracks were placed in the
streets in 1892 to the time the suit was instituted in
1907.  Howard County v. Railroad, 130 Mo. 652; Janus
v. Kansas City, 83 Mo. 567; 2 Lewis on Eminent Do-

Ettenson v. Railroad.

main (2 Ed.), pp. 1416-17, sec. 653B; Roberts v. Railroad, 158 U. S. 1; Loomis v. Railroad, 165 Mo. 469. (3) It is also a rule in equity that an injunction removing valuable structures from a street as being a nuisance will not be granted, unless the conditions imperatively call for it; nor unless the damages caused by such removal will not be out of proportion to the benefits to plaintiff; nor if the public would suffer great inconvenience. Bank v. Kennett, 101 Mo. App. 370; Osborne v. Railroad, 147 U. S. 248; McElroy v. Kansas City, 21 Fed. 257; Waggoner v. City, 88 Mo. 34; Good v. Fire Brick Co., 224 Pa. St. 496. (4) Even had there been no estoppel or limitation in the case, the sweeping decree of the court was not justified. The streets, by reason of their natural location, were useless as thoroughfares; no one owning improvements abutting on the alleged obstruction, was complaining; and defendant's tracks occupied something less than one-tenth of the eighty foot street and less than one-half of the sixty foot street. Seibel-Suessdorf Co. v. Railroad, 230 Mo. 59; Foundry v. Railroad, 130 Mo. App. 104; Ft. Edward v. Railroad, 111 N. Y. 753; Colorado Springs v. Railroad, 38 Colo. 107. (5) The reservation by plaintiff's grantors of the right to maintain street railways in the streets, was binding on plaintiff. Traction Co. v. Dunham, 88 S. W. 849. (6) Ordinance 300, and the lost ordinance it was passed to supply, authorize the use of the streets for railroad purposes. (7) Ordinance 967 authorizes track No. 2 in The Concourse.

*Culver, Phillips & Spencer* for respondents.

(1) *a.* The evidence established and the court found (and it is not denied here) that defendant has entirely monopolized St. Joseph avenue, and The Concourse, for railroad purposes and transformed them into railroad yards; that the location of its main track,

switch tracks, frogs, switch stands, water tank, tool house, oil tanks, the projection of the rails of the tracks above the surface of the ground, the unfilled space between the ties, the elevation of the tracks in The Concourse on an embankment. above the natural surface of the street, and distant only twenty feet from plaintiff's property line, the elevation and location of switches 5, 6 and 7, the almost constant use of the space west of switch number 3, for loading, unloading and depositing freight, rails and other material used for railroad purposes, the constant use of the tracks for the passage of twenty-two trains arriving and departing daily, and for switching engines and making and breaking up freight and passenger trains, and the continual standing of at least thirty cars day and night on the tracks, has completely destroyed the use of these streets as public thoroughfares, and as completely destroyed the ingress to and egress from the plaintiff's property. Such use of a public street could not be, and was not authorized by either ordinance 300 or 967 of Excelsior Springs, and was unlawful, and constituted a public nuisance, which the plaintiff, as an adjoining property owner especially injured had the right to enjoin. State ex rel. v. Railroad, 206 Mo. 251; Peters v. City, 226 Mo. 73; Swinhart v. Railroad, 207 Mo. 423; Corby v. Railroad, 150 Mo. 457; Knapp Stout & Co. v. Railroad, 126 Mo. 26; Lockwood v. Railroad, 122 Mo. 86; Schopp v. St. Louis, 117 Mo. 131; State ex rel. v. Railroad, 86 Mo. 13; Duboch v. Railroad, 89 Mo. 483; Brown v. Railroad, 137 Mo. 530; State ex rel. v. Murphy, 134 Mo. 562; De Geofroy v. Bridge Co., 179 Mo. 715; Lumber Co. v. Railroad, 129 Mo. 455; Sherlock v. Railroad, 142 Mo. 172; Lackland v. Railroad, 31 Mo. 188. (b). Ordinance 300 authorized the construction of a single railroad in St. Joseph avenue. It says nothing about sidetracks. Public ordinances granting franchises are to be construed strictly against the grantee. Railroad v. Rail-

road, 24 Fed. 308; Railroad v. Kentucky, 161 U. S. 685; Thompson on Corporations, sec. 5345; Sutherland on Statutory Construction, sec. 378. But even if the ordinance had expressly granted the right to construct and operate all the switches of which we complain, it would have been absolutely void because the city has no power to pass an ordinance granting the right to obstruct the street and exclude the public from the use thereof. State ex rel. v. Murphy, 134 Mo. 562; State ex rel. v. Railroad, 206 Mo. 262; Peters v. St. Louis, 226 Mo. 69. (c) Neither did ordinance 967 afford any authority to build track No. 2, on an embankment within twenty feet of plaintiff's property because: 1st. The ordinance is absolutely void. The record shows that ordinance 300 was passed with the written consent of the owners of the abutting property; and the ordinance itself so recites. But there was no consent in writing by petition or otherwise, "of the owners of the land representing more than one-half of the frontage of the street" to the passage of ordinance 967. Without such consent the city had no power to pass the ordinance. R. S. 1909, sec. 9497; R. S. 1899, sec. 6119. 2d. The ordinance did not purport to, and could not grant the right to lay the track, as it was laid from two to two and one-half feet above the grade which was the natural surface of The Concourse. DeGeoffroy v. Bridge Co., 179 Mo. 708. 3rd. This court should not modify the decree in this case so as to require it only to place track No. 2 on grade. Swinehart v. Railroad, 207 Mo. 438. (2) The plaintiff has no adequate remedy at law under the facts in this case. Swinehart v. Railroad, 207 Mo. 435; State ex rel. v. Murphy, 134 Mo. 562; State ex rel. v. Railroad, 206 Mo. 262. Nor does the claim of laches preclude the plaintiff from the relief granted him. The acts complained of constitute a public nuisance. Smith v. Sedalia, 152 Mo. 301; 29 Cyc. 1207;

Bowen v. Wendt, 37 Pac. 149; Mayer v. Land, 34 Colo. 613; Meiners v. Brewing Co., 10 L. R. A. 587; Woodruff v. Gravel Co., 18 Fed. 753. .

BROWN, P. J.—Injunction to restrain the obstruction of public streets. From a judgment for plaintiff, defendant appeals.

Plaintiff, a resident of the State of Kansas, owns about sixty unimproved lots in Excelsior Springs, Missouri, a city of 4500 inhabitants. Said lots are worth about $30,000.

Defendant is a railroad corporation, and owns and operates a steam railroad between St. Louis and Kansas City, Missouri, with a spur about nine miles long connecting its main line with said city of Excelsior Springs.

That part of the city of Excelsior Springs where plaintiff's town lots are situated was laid out in the year 1887, and the streets and alleys therein were dedicated to public use forever, "save and except the right of way for the street railroads," which right of way was reserved by and to the proprietor, its successors and assigns.

More than half of plaintiff's lots abut on "The Concourse," a street eighty feet wide, shaped like a bow. It encircles the west half of the city.

St. Joseph avenue is sixty feet wide, runs north and south, and each end thereof intersects and merges into The Concourse.

There are three blocks containing thirty-one lots lying between The Concourse and St. Joseph avenue, all of which are owned by plaintiff. Nearly all of plaintiff's other lots abut on the east side of St. Joseph avenue.

There are four other streets running east and west which cross or touch St. Joseph avenue and are adjacent to plaintiff's town lots. They are Chillicothe

avenue, Chicago avenue, Leavenworth avenue and St. Louis avenue.

Defendant's railroad enters The Concourse from the south, passes diagonally across same, thence northward through St. Joseph avenue, and terminates in The Concourse at the north end of the city.

Plaintiff asserts that the defendant has injured and greatly depressed the value of his town lots aforesaid by the following acts:

Constructing one of its tracks so close to plaintiff's lots that its cars project over said lots when operated on said track.

Building and maintaining tracks of its railroad at some places in said St. Joseph avenue and The Concourse, above the natural grades of said streets, and other places below the grades of said streets, so that vehicles cannot pass over said tracks.

Loading and unloading building material, rails and other freight upon and leaving the same in said streets.

Making up and breaking up trains and storing large numbers of cars on said street in front of plaintiff's property.

Constructing and maintaining three tanks, one tool house, one switch stand and part of a stock pen in the aforesaid streets, and by constructing and maintaining a brick platform extending fourteen feet into St. Joseph avenue above the grade thereof, in such manner as to obstruct travel on said street.

"Wherefore, plaintiff prays that defendant may be enjoined from using said St. Joseph avenue and. said Concourse and all intersecting streets for sidetracks or switch yards, or depot grounds, and from storing or fixing cars thereon, and from making up or breaking up trains thereon, and from receiving or discharging, loading or unloading freight thereon and from raising or lowering the grade or natural surface of any of said streets, and from constructing any road

bed or track on said streets, so as to obstruct or interfere with public travel, and from using said streets for the deposit of material for building or repairs and from using said streets in any manner or constructing its tracks in any manner so as to obstruct or interfere with the use of said streets as public highways, and from in any manner obstructing plaintiff's access to any of his said lots, or interfering with his right of ingress or egress to and from his said lots, and from obstructing said streets or any part thereof with any kind of buildings, platforms, fences or structures, and for such other and further relief, as to the court may seem equitable."

For answer, defendant admits that its tracks, switch stand, tool houses and other appliances are located in St. Joseph avenue and The Concourse, in said city, but denies that said tracks and other appliances injure or depress the value of plaintiff's town lots or that said tracks and appliances are used in such manner as to obstruct ingress and egress from plaintiff's property to said streets.

Defendant also relies upon the following defenses:

(1) That it is the successor of the Excelsior Springs Railroad Company, which last named company constructed most of the sidetracks in The Concourse and St. Joseph avenue before plaintiff purchased his property abutting on said streets.

(2) That said railroad and other appliances were constructed at the request and with the express approval of plaintiff's grantor; and that plaintiff was aware of the existence of defendant's railroad upon said streets and the uses that were being made thereof when he purchased his town lots.

(3) That about the year 1891 the inhabitants of Excelsior Springs, including the parties who then owned the town lots now owned by plaintiff, were very anxious to secure railroad facilities for said city, and

to that end donated to defendant's predecessor, the Excelsior Springs Railroad Company, a depot site on the east side of St. Joseph avenue, and encouraged said Excelsior Springs Railroad Company to construct its railroad tracks along and across The Concourse and on said St. Joseph avenue, which streets had theretofore never been graded and were not then used for public travel. That the route adopted for said railroad was the only feasible way of getting into and near the business center of said city of Excelsior Springs.

(4)    That from and after the construction of defendant's railroad upon, over and along The Concourse and St. Joseph avenue, said railroad was continuously used in hauling passengers and freight, and for loading, unloading and storing cars in the same manner in which it was being used when this action was instituted.

(5)    That said use of said street was with the approval of the parties then owning the lots now owned by the plaintiff.

That in the year 1895 the defendant purchased said Excelsior Springs railroad with its depot and other appliances and equipments and has used and operated the same ever since, expending many thousands of dollars in improving said road and in constructing a new depot and platform on the site donated for that purpose by plaintiff's grantors.

Defendant also pleads the following ordinances of the city of Excelsior Springs:

Ordinance No. 300, enacted December 13, 1894, authorizing defendant's predecessor to maintain and operate its railroad over and along The Concourse and St. Joseph avenue, as said railroad was then constructed.

Ordinance No. 967, dated March 28, 1907, purporting to authorize defendant to construct a track along the east thirty feet of that part of The Concourse

where no track had previously been laid; in consideration of which last named concession the defendant should become obligated to macadamize a strip of said Concourse twenty feet wide, "so far as may be necessary and proper for the convenient loading and unloading of cars delivered on said track."

Defendant also asserts that in constructing said last named track and improving The Concourse, as provided by the last named ordinance, it has expended many thousands of dollars.

The defendant also pleads the five and ten-year Statute of Limitations, and alleges that by his laches and delay in bringing this action, plaintiff is estopped from maintaining the same.

Without pleading it, defendant also relies upon a deed from plaintiff's grantor, purporting to convey to defendant's predecessor the right to construct and operate a steam railroad upon St. Joseph avenue and The Concourse.

The circuit court found the issues for plaintiff; and entered the following decree:

"Wherefore, it is considered, ordered, adjudged and decreed by the court that the said defendant be and it is hereby, enjoined from using said St. Joseph avenue and said 'The Concourse,' and all intersecting streets, for sidetracks, or switchyards, or depotgrounds, and from storing or shifting cars thereon, and from making up or breaking up trains thereon, and from receiving or discharging passengers thereon, and from receiving or discharging, loading or unloading freight thereon, and from raising or lowering the grade or natural surface of any of said streets, and from using said streets for the deposit of material for building or repairs, and from obstructing said streets with any kind of building, platforms or structures, which may interfere with public travel, and that said switch tracks numbered 2, 3, 4 and 7 as numbered and described in plaintiff's petition, and that portion

of said switch No. 1 lying in Chillicothe avenue north of the north line of lot 1 in block 6 in Central Park Addition, and that portion of switch No. 5 lying in 'The Concourse' north of its junction with switch No. 6, be removed from said streets, and that part of switch track No. 6 from its northern exit from 'The Concourse' to its junction with switch No. 5, and that part of switch No. 5 from its junction with switch No. 6 to its junction with the main track, which parts of said switches Nos. 5 and 6 now constitute a part of the main track of said branch line running from said Excelsior Springs Junction to defendant's round house and engine yard, and also the remainder of said switch No. 1 lying within the limits of 'The Concourse,' as well as the rest of defendant's· said main track in said streets, be constructed on the grade of said streets, and in such manner as not necessarily to impair the usefulness of said streets for public travel, and that such main track be used for the passage of trains over the same, but not otherwise.''

Is the foregoing decree correct under the pleadings and evidence in this case?

The defendant has two switches or turnouts near the south end of St. Joseph avenue, two switches in and running along said last named avenue, and three switches in The Concourse north of St. Joseph avenue. A more particular description of each of the said switches will be given in connection with our conclusions of law.

Mr. J. J. Emmet, a witness for the plaintiff, testified that during September and October, 1907 (just prior to the institution of this suit), he made observations and kept a record of the cars stored on the various switches of defendant's road in The Concourse and St. Joseph avenue, and from that record he testified that defendants stored from twenty to sixty cars on said switches daily during a period of twenty-five days, and that the average number of cars so stored

on said switches during said period was thirty cars per day.

The evidence abundantly sustains the allegations of plaintiff's petition that defendant's railroad tracks were not constructed on the grade of The Concourse or St. Joseph avenue. In some places both ties and rails were above the natural grade of the street. In other places the tracks were constructed on embankments three and a half feet above such street grade, and in still other places such tracks were constructed below the grade of the streets; so that it was impossible to pass over said tracks with vehicles.

There was also evidence that The Concourse was a comparatively level street, and was used as a driveway before the defendant constructed its tracks thereon, but could not be so used afterwards, because of the cuts and embankments made thereon by defendant.

Plaintiff introduced a petition filed by the defendant in the circuit court of Clay county about March 13, 1907, in an action to condemn the thirty-one lots owned by plaintiff, lying between St. Joseph avenue and The Concourse.

In said action to condemn, the plaintiff there (defendant here), alleged that it was:

"About to construct, maintain and operate on the ground herein described, and other ground adjacent thereto, its depot, sidetracks and switches, to be used —and necessary to be used—in carrying on its business as such railroad company.

"Plaintiff further says that it needs—and that it is necessary for it to acquire—for its said depot, sidetracks and switches, to be used as aforesaid, and for the general purposes of its said railroad"—(Then follows a description of plaintiff's last mentioned lots.)

The record does not show what was done in this action to condemn plaintiff's land for depot and switch purposes, but it is inferable from admissions in the

briefs of the parties that said suit was abandoned after defendant constructed its last switch along the western part of The Concourse.

The record further shows that the construction of this last named switch was begun at three a. m. on Sunday, July 9, 1907.

The evidence shows that plaintiff purchased his town lots in Excelsior Springs in the year 1900, and that defendant constructed a new depot on the east side of St. Joseph avenue in 1907. Said depot is constructed between and near plaintiff's lots, and it does not appear that he objected to its construction or gave notice to defendant that he was unwilling for St. Joseph avenue to be used for railroad purposes, either before or during the time that said depot and platform in front thereof were being constructed.

The cost of defendant's depot is not proven, but from a photograph thereof introduced in evidence, it may be inferred that it did not cost to exceed three thousand dollars.

The evidence of both parties proves that the city of Excelsior Springs had a population of only twelve to fifteen hundred at the time defendant's railroad was constructed (in 1892); that since 1892, its population has grown to 4500.

It also clearly appears that those tracks and switches of defendant's railroad in The Concourse and in St. Joseph avenue which were constructed before plaintiff purchased its town lots (in 1900) were at the time of said purchase used to make up and break up trains and to store, load and unload cars in the same manner that they are now used, except that the business of defendant had greatly increased since 1900, and consequently, many more cars and more freight and passenger traffic is now handled by defendant on said streets than in the year 1900.

The defendant's depot and most of plaintiff's lots are only a few hundred feet from the principal hotel

and business center of Excelsior Springs, and plaintiff's lots would be valuable for residence purposes if St. Joseph avenue and The Concourse were not obstructed by defendant's tracks and cars.

## OPINION.

### I.   *Reservation of Right of Way.*

The deed from plaintiff's grantor purporting to convey a right of way on St. Joseph avenue and The Concourse, was not sufficient to authorize the defendant to construct and operate a steam railroad on said streets.

This deed only purported to convey the right of way reserved by plaintiff's grantor at the time the streets were dedicated to the public.  That reservation was only for "street railroads;" and this court takes judicial notice that there is such a wide difference between street railroads and steam railroads, that a right of way for street railroads would not authorize the construction of a steam railroad.

The case of Railroad v. Dunham, 88 S. W. (Tex.) 849, cited by defendant, is not in point; for the reason that in that case the reservation was of a right of way for "any railway."

### II.   *Estoppel.*

The defendant's contention that plaintiff is not entitled to cause the removal of such of defendant's tracks as were laid in St. Joseph avenue and The Concourse before plaintiff purchased his town lots abutting on said streets, is sound, but subject to certain modifications hereinafter named.

Defendant's depot is situated on the east side of St. Joseph avenue, near the center of plaintiff's town lots.  Said depot site was donated to defendant's predecessor by plaintiff's grantor, and the evidence is very clear that defendant's main track on St. Joseph avenue and most of switch No. 3, just west thereof, were

constructed with the full consent and approval of plaintiff's grantor, and that plaintiff knew of the location of said railroad and depot site before he purchased the lots which he now claims are injured by the operation of said main track and switch No. 3.

From what has been said, it is manifest that plaintiff's grantor having donated the land for defendant's depot site and having helped to secure the placing of defendant's track and switch No. 3 at the place they now occupy in St. Joseph avenue, he (plaintiff's grantor) could not now be heard to urge the removal of either of said tracks. Therefore, we find that plaintiff, as privy and successor in title of the party who caused those tracks to be located in St. Joseph avenue, is not now in a position to complain of their presence in the street in front of his property. [Hubbard v. Slavens, 218 Mo. 598, l. c. 621; Roberts v. Northern Pacific R. R. Co., 158 U. S. 1.)

It would indeed be a harsh doctrine that would allow a landowner to induce others to make valuable improvements of a legitimate character near his land, and then permit a person who subsequently purchased such land to cause said improvements to be removed.

The existence of a railroad in the streets of a city is not prima facie illegal, and does not constitute a nuisance, unless such road be constructed and operated in such manner as to deprive the public and abutting landowners of the use of such streets as thoroughfares. [Seibel-Suessdorf Copper & Iron Mfg. Co. v. Manufacturers' R. R. Co., 230 Mo. 59.]

It follows that so much of the trial court's decree as requires the removal from St. Joseph avenue of switch No. 3, is erroneous.

The right of plaintiff as an abutting landowner to regulate and control the manner in which defendant shall conduct its main line and switches constructed before plaintiff purchased his town lots, will receive attention in another paragraph of this opinion.

III. *Switch Yard In Street.*

Defendant's switch No. 2 leaves the main track near the south end of St. Joseph avenue and runs around The Concourse at a point where no track had previously been constructed. The construction of this track was begun at the hour of 3 a. m., on Sunday, July 7, 1907, and encircles the plaintiff's thirty-one lots which lie west of St. Joseph avenue.

It was constructed about the same time that defendant instituted its suit to condemn said last named thirty-one lots for depot and switch purposes.

This switch appears to have been constructed for no other purpose than to furnish a place for defendant to store, load and unload freight cars. This is obvious from the phraseology of the ordinance which purports to authorize its construction. That ordinance requires defendant to macadamize a strip of the The Concourse twenty feet wide, parallel with said switch No. 2, "so far as may be necessary and proper for the convenient loading and unloading of cars delivered on said track."

Defendant in support of its pretended right to construct and operate this switch No. 2, alleges that said switch does not interfere with public travel on The Concourse; but the great preponderance of evidence is to the effect that at places said switch is constructed three and a half feet above the natural grade of the street, and in other places in open cuts below such grade. Also, that it prevents travel with vehicles on the west part of The Concourse altogether. Its presence undoubtedly depreciates the market value of plaintiff's lots very materially, and as the city council possessed no power to donate the street or any part thereof for a switch yard, and the defendant had no right to receive or appropriate it for that purpose, to the injury of an abutting owner, the action of the trial court prohibiting the use or maintenance of switch No. 2, was correct. [Swinhart v. St. L. & Sub.

Railway Co., 207 Mo. l. c. 433; Lockwood v. Wabash Railway Co., 122 Mo. 86; Versteeg v. Wabash Railway Co., 249 Mo. ——.]

IV. *Laches.*

Switch No. 4 was constructed after plaintiff purchased his lots, and about four years before this action was instituted. It leaves the main track on St. Joseph avenue about 100 feet south of defendant's depot and runs thence south on the west side of said main track about 500 feet. It passes within less than three feet of ten of plaintiff's abutting lots—so close that defendant's cars when operated thereon, protrude or extend over the west end of plaintiff's said lots.

Most of this switch is above the natural grade of the street and plaintiff can only secure access with vehicles to his ten lots last named, through a fifteen-foot alley in the rear thereof.

That the value of at least ten of plaintiff's lots is greatly impaired by the maintenance and operation of switch No. 4, there is no room for doubt.

However, defendant insists that plaintiff is estopped from complaining of the maintenance and use of said switch No. 4, because he waited four years after it was constructed before instituting this action, during which time defendant expended many thousand of dollars in constructing a new depot and improving its tracks.

It is true that the defendant did construct a new brick depot on the site where its wooden depot formerly stood, after switch No. 4 was put in; but there is no satisfactory proof that this depot was constructed under the belief that defendant would be permitted to permanently occupy a switch which renders plaintiff's lots almost valueless.

The evidence does not show what the new depot cost, and nothing appears from which it can be in-

ferred that it cost more than three thousand dollars. It may not have cost that much. Switch No. 4 does not touch the depot, nor is its use indispensable in connection with said depot. There is no evidence at all of what was expended in constructing switch No. 4.

The use of a public street in a populous city for storing or unloading cars is prima facie illegal; so it cannot be presumed that defendant believed that plaintiff would suffer said switch to permanently remain where it was placed. Plaintiff's property in front of which switch No. 4 is located, is not improved, and because he neglected for four years to seek redress, which delay did not mislead defendant to its injury, plaintiff is not barred from the relief granted him by the trial court; and its judgment ordering said switch removed is not erroneous.

V. We next come to the relief granted plaintiff against making up and breaking up trains, storing, loading and unloading cars and depositing freight and other material on the streets in front of plaintiff's property.

It is true that the preponderance of evidence establishes the fact that when plaintiff purchased his lots in 1900 defendant's tracks in front of said property were being used for the same purposes for which they are now being used; but even the defendant's evidence clearly indicates that a great many more trains are being made up and broken up and more cars, material and freight loaded, unloaded and stored on said streets than when plaintiff purchased his lots.

Because some trains were being made up and broken up and cars stored on the streets when plaintiff purchased his lots and when Excelsior Springs was little more than a village, should he be deemed to have assented to an indefinite increase in the use of said streets for such purposes? We think such a rule would be illogical. [Hatch v. Railroad, 4 N. Y. Supp. 509.]

When plaintiff purchased his town lots it is not at all probable that either he or the defendant knew or even believed that in seven years it would become necessary to store, load or unload an average of thirty cars per day at Excelsior Springs. If defendant had then believed that its business would be thus augmented in so short a time, it would doubtless have purchased land for a switch yard before the growth of the town rendered such property more valuable.

Be that as it may, it is apparent that the owner of unimproved lots on a street upon which the travel was not then extensive, would not deem it worth while to object to the occasional storing of cars or material in front of his property. His injuries from such occasional making up and breaking up trains, and storing, loading and unloading of cars would then be insignificant and probably governed by the doctrine of *de minimis non curat lex*. However, when the number of cars to be stored and unloaded has grown to thirty cars per day, the situation becomes entirely different, and renders it necessary for the party handling such cars and freight to secure switching grounds or freight yards of its own, so that the streets may be used for public travel, the purpose for which they were originally dedicated.

We do not hold that a railroad company should be compelled to procure land for switches and sidetracks at every village or place where it is called upon to deliver freight and where its main track may pass through a public street; but in the present case, there is strong evidence to the effect that defendant's business has grown to such a point that it needs a private switch yard in which to make up and break up trains, store, load and unload its cars.

This fact is specifically admitted in the petition which defendant filed in the circuit court in its action to condemn a part of plaintiff's property. That suit appears to have been abandoned; but it is a settled

rule of law that the statements and allegations con-
tained in abandoned pleadings are competent evidence
against the party making them. [Walser v. Wear,
141 Mo. 443, l. c. 463, and cases there cited.]

From the facts in this case, we hold that the plain-
tiff is not estopped from obtaining relief against the
making up and breaking up of trains, storing, loading
and unloading of freight cars in front of his prop-
erty. But defendant should be allowed to unload from
its cars and deposit on such streets such freight and
materials as it may from time to time need to repair
its own property situated in or adjoining those streets.

VI. *Decree Excessive.*

We find, however, that the decree below forbid-
ding the reception or discharge of passengers at de-
fendant's depot is not warranted by the evidence in
this case. Plaintiff admits that defendant is entitled
to operate cars on its main track on St. Joseph ave-
nue, and with a right to run trains over said street
the receipt and discharge of passengers at or near its
depot would not materially injure plaintiff's abutting
property, even for residence purposes.

VII. The trial court ordered the removal of that
part of switch No. 1 which crosses Chillicothe avenue.

This switch leaves the main track south of St. Jo-
seph avenue, and was built to accommodate an ice
plant situated on block 6. It also passes through said
block 6, and extends across Chillicothe avenue slightly
below the grade of that street. The only evidence
tending to show why switch No. 1 was extended across
Chillicothe avenue, is that it afforded a convenient
place to unload freight in the street.

The evidence further shows that the presence of
this switch across Chillicothe avenue completely shuts
off travel along that street and bars one of the legal

methods of ingress and egress to and from plaintiff's property on St. Joseph avenue.

This switch was constructed in 1906, and the trial court did not err in directing the removal of that part of it which obstructs Chillicothe avenue.

VIII. *Duty to Restore Street.*

This leaves undisposed of the defendant's right to maintain its depot platform, switches in the north end of The Concourse, tanks, tool house, switch stands and stock pen; also the complaint that defendant's main track and all of the switches are constructed either below or above the natural grade of the streets and the plaintiff and the public are thereby hindered and prevented from using said streets.

The evidence is not very clear as to the date when the switches in the north end of The Concourse were constructed. There is, however, some evidence to the effect that those switches, as well as the tanks, tool house, switch stands and stock pen, were constructed before plaintiff purchased his lots in Excelsior Springs.

The sidewalk in front of the depot standing above the grade of the street is of course some obstruction to travel with vehicles along that part of St. Joseph avenue; but a sidewalk is not prima facie a nuisance; and if the street were graded up level with or nearly level with the top of said sidewalk, it would probably become a benefit rather than an obstruction to plaintiff and other property owners in that locality.

We have found that plaintiff is estopped from complaining of the location of such railroad tracks as his grantor caused to be constructed in the streets of Excelsior Springs in front of property which said grantor subsequently sold to plaintiff.

The further issue now arises, is plaintiff estopped from maintaining an action to compel defendant to

restore said streets to the condition they were in before said railroad tracks were laid?

In other words, if it be conceded that defendant has in a lawful manner gotten its railroad tracks into the streets of said city, but after constructing its railroad on said streets above or below the grade thereof, has neglected to restore the streets to their former state or to such state as not unnecessarily to have impaired their usefulness, as required by section 3049, Revised Statutes 1909, can plaintiff who has purchased lots abutting on the streets where said railroad tracks were previously laid, compel defendant to restore the streets to their former state?

We hold that he can.

While defendant may have procured a lawful right to lay its tracks in the streets of Excelsior Springs, it did not and could not from any source have procured the right to lay its tracks above or below the grade of such streets so as to needlessly interrupt or obstruct the public travel thereon.

In laying its tracks above and below the natural grade of said streets and in neglecting to construct crossings over its track so that the public could pass over same in safety, it was guilty of maintaining a continuing public nuisance, and its acts in that regard could not ripen into legality by the lapse of time or the acquiescence of an abutting owner. [Raht v. Southern Ry. Co., 50 S. W. (Tenn.) 72, 1. c. 77; Hatch v. Railroad, 4 N. Y. Supp. 509; Hamden v. Railroad, 27 Conn. 158.]

In the case of Hatch v. Railroad, supra, in construing a statute which is in precisely the same language as our own, the Supreme Court of New York in general term held that: "Railroads are required to restore highways to their former state of usefulness, and to preserve them in such state. The duty is a continuous one. If, by an increase of business on highways, the facilities first provided become inade-

quate, the corporation must make such changes as are reasonably necessary to provide for the needs of the public. . . . The duty being a continuous one, the action was not barred by any statute of limitations.''

Although plaintiff is estopped from demanding the removal of any railroad tracks which were constructed in front of his property at the time of his purchase, he is not deemed to have assented to the illegal use of such railroad tracks, nor to have waived the right to demand that proper crossings be constructed over same and that the streets be restored to their former state of usefulness as a public thoroughfare. [Depriest v. Jones, 21 S. E. (Va.) 478.] .

In the case last cited, the plaintiff sought to compel the defendant railroad to open a public alley near his property, which alley had been inclosed for a long period of time. In the opinion, it was said: ''The defendant relies upon adversary possession for more than twenty years. This defense can not be made by one who undertakes to shut up or obstruct a public highway.''

It is not literally possible with a railroad track laid in a public street to restore such street to precisely the same state in which it was before the railroad was built; but the ''rule of reason'' and enlightened common sense should be applied in placing a practical construction on section 3049, Revised Statutes 1909. It must be inferred that the Legislature intended that its acts should be given a practical construction. [Keeney v. McVoy, 206 Mo. 42.]

St. Joseph avenue and The Concourse should be restored to such condition as will reasonably accommodate the public travels over and across such streets and afford plaintiff ingress and egress to and from his property.

' What is a reasonable and practical restoration of a street upon which a railroad track has been laid, so as not to unnecessarily impair its usefulness, must in

the nature of things be governed by the facts in each case.

If a railroad track were laid through a small village on a street seldom or never used by vehicles or pedestrians, proper grade crossings at intersecting streets which are used, might be sufficient restoration to meet the requirements of the law; while in a very populous city, it would be absolutely necessary to bring the entire track to the grade, so that vehicles and pedestrians could cross it at any place they chose.

In the instant case, the evidence shows that Excelsior Springs has a population of 4500 and is visited as a health resort by about 100,000 persons annually; and consequently, all of its principal streets which are level enough for travel should be kept open.

The evidence does not satisfactorily establish how the plaintiff or his property is injured by the existence of the tanks, tool house, switch-stands, and stock pen of the defendant. Neither does the record show whether it is more practical and feasible to depress defendant's tracks to the natural grade of the streets or raise the grade of the streets to correspond to the tracks where such tracks are above the street grade.

The evidence does show that at the south end of St. Joseph avenue the defendant's main track is about four feet below the grade of the street, and defendant contends that it is not practical to raise its tracks at that point. It does appear reasonably certain that the defendant's tracks may be raised to the level of the street at that point or that the street may be depressed to the level of the track.

**Remedy by Mandamus.**

However, this suit was not tried as a mandatory injunction intended to bring about the restoration of the streets to their former condition. The right of plaintiff to strictly injunctive relief was the only issue which was fully developed by the evidence.

It is possible that by a new trial plaintiff might

make a showing entitling him to have the streets restored to their former state as a matter of mandatory relief; but the record is not in such condition as to enable us to intelligently direct a restoration of the streets on this appeal.

We have therefore decided to direct a judgment granting to plaintiff such injunctive relief as the evidence clearly shows he is entitled to; and remit him to an action of mandamus to compel defendant to restore St. Joseph avenue and The Concourse to such condition as they ought to be restored to to protect plaintiff's rights.

Under the rule we announce in State ex rel. Titus v. Wabash, 206 Mo. 251, the plaintiff, as an abutting owner and taxpayer, is clearly entitled to maintain an action against the defendant to compel the restoration of the streets where defendant has laid its tracks above or below grade; and in that action, the trial court can upon a full hearing, determine whether or not it is necessary in protecting plaintiff's rights as an abutting owner, to remove from the streets the sidewalk in front of defendant's depot, its tanks, tool house, stock pen, switch stands and any of the switches in the north end of The Concourse.

A mandatory injunction is usually denied when the plaintiff has a complete remedy by mandamus. [High on Injunctions (4 Ed.), sec. 28.]

The judgment of the circuit court is reversed and the cause remanded, with directions to enter a new judgment enjoining defendant from doing the following matters and things:

(1) From using, operating or in any way maintaining the following named switches or sidetracks laid upon the streets and avenues of the city of Excelsior Springs, Missouri, to-wit: That part of switch No. 1 laid across Chillicothe avenue; all of switch No. 2 laid in The Concourse; all of switch No. 4 laid in St.

Joseph avenue; describing said switches as they are described in plaintiff's petition.

(2)   From making up and breaking up trains or storing freight cars on any of defendant's tracks in front of plaintiff's property in said city, and from loading or unloading freight cars and from depositing any class of freight on the streets in front of the town lots described in plaintiff's petition. · Provided that the decree so directed shall not when entered have the effect of preventing defendant from unloading from its cars such material and tools as it may from time to time need in repairing its property lawfully located in or adjoining St. Joseph avenue or The Concourse; and said decree shall not restrain or prevent defendant from receiving and discharging passengers at or within a reasonable distance of its depot situated on the east side of St. Joseph avenue.

The decree so directed to be entered, shall not prejudice the rights of plaintiff to bring and maintain another suit or suits to compel the restoration of St. Joseph avenue and the The Concourse to their former state or such state as not to unnecessarily impair their usefulness.

It appearing that a reasonable postponement of the injunctive relief to be awarded the plaintiff by the judgment herein directed will not prove injurious to said plaintiff; and that as the defendant will by said judgment so directed be precluded from storing cars or loading freight upon the streets of Excelsior Springs, Missouri, it will need a reasonable time in which to secure a private switch yard in which to handle its freight and freight trains; it is ordered that the judgment which we have herein directed the circuit court to enter shall not be executed or take effect until ninety days after the mandate in this· cause is filed with the clerk of the circuit court of Clay county, Missouri. *Ferriss* and *Kennish, JJ.,* concur.