# CASES

## ARGUED AND DETERMINED

### IN THE

# ST. LOUIS COURT OF APPEALS.

## MARCH TERM, 1878.

---

D. H. SILVER ET AL., Respondents, *v.* ST. LOUIS, IRON
MOUNTAIN, AND SOUTHERN RAILWAY COMPANY, Appel-
lant.

### March 5, 1878.

1. When a partnership is created for a joint undertaking, each partner to
collect certain proceeds, and the entire receipts to be shared upon a basis
fixed in the agreement, any claim preferred by one against the other for
a share of proceeds unfairly withheld is the proper subject for the taking
of an account, to ascertain the various items of receipt and disbursement
by either partner, to compare them together, and strike the proper bal-
ance. But if the parties themselves have cast up the items, and agreed
upon the state of the account and the resulting balance either way, there
is no further account to be taken, unless upon a suggestion of fraud,
mistake, or omission, operating to falsify their conclusion; and the court
cannot interfere with the result thus settled by the parties.

2. In such a settlement, plaintiffs, in anticipation of profits on freights, made
advances to defendant; but, owing to the destruction of the cargo, no such
profits were realized. Defendant denied the partnership. The issue of
fact raised involves no question of account. Defendant is liable to plain-
tiffs for the amount so advanced, or for nothing, as well as for one-half the
proceeds of certain other freights included in such settlement. The
prayer of the petition was for an accounting, but as the character of the
claims was such that they might be prosecuted in actions for "money had
and received," and "account stated," the prayer cannot be considered as
modifying the character of the demands. *Held,* that the issues in this
case were properly triable by a jury, and that the case was not one for
reference, or triable by the court.

3. Where one party to an alleged contract made by its agent ·denies the contract, and then introduces the agent to prove what the contract really was, such party will not be heard to deny the agent's authority to make· any contract whatever.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

THOROUGHMAN & WARREN, for appellant: Upon the· pleadings in this case, under the Practice Act, this cause was triable only by the court, and could not be tried by a jury, even by consent. — Wag. Stat. 1041, secs. 12, 13 ; 2 Nash's Pl. & Pr. 364; *Bray* v. *Thatcher*, 28 Mo. 133; *Cowan* v. *Sellew*, 28 Mo. 330; *Morris* v. *Morris*, 28 Mo. 117; *Hunter* v. *Whitehead*, 48 Mo. 124; *Meeks* v. *Senden*,. 54 Mo. 130. Principal and agent. — *Coal, etc., Co.* v. *Railroad Co.*, 35 Mo. 85.

A. W. SLAYBACK, for respondents : Where the merits of the case have been fairly placed before the jury, an appellate court will disregard any informality in making up the issue. — *Darby* v. *Charless*, 13 Mo. 600 ; *Daily* v. *Houston*, 58 Mo. 366. Although an account must always be taken of the partnership affairs before any judgment can be rendered in favor of one partner on accounts growing out of the joint interests, yet one partner may sue another, at any time, for a breach of the covenants in a partnership agreement. — *Stone* v. *Wendover*, 2 Mo. App. 247 ; *Buckner* v.. *Ries*, 34 Mo. 357 ; *Byrd* v. *Fox*, 8 Mo. 574. If the petition sets forth a good cause of action at common law, other irrelevant allegations may be disregarded, or stricken out as: surplusage. — *Garner* v. *Railroad Co.*, 34 Mo. 235 ; *Clemens* v. *Collins*, 14 Mo. 604. A petition stating such facts as show a right of recovery in the plaintiff will be sufficient, although the facts are not so stated as to show a right of recovery in any of the common-law forms of action. — *Ahern* v. *Collins*, 39 Mo. 145 ; *Ladd* v. *Clark*, 42 Mo. 519. The character of a petition is not always determined by the· relief it prays for. The court may grant any relief con-

sistent with the case, and embraced within the issues. —
Wag. Stat. 1054, sec. 12; *Northcraft* v. *Martin,* 28 Mo.
469; *Easley* v. *Prewitt,* 37 Mo. 361; *Corning* v. *Railroad
Co.,* 48 Mo. 512; *The State* v. *Randolph,* 26 Mo. 213;
*Hug's Administrator* v. *Van Burkleo,* 58 Mo. 203. All that,
portion of the prayer not warranted by the petition is a
nullity, and should be treated as surplusage. — *McGlothin.*
v. *Hemerey,* 44 Mo. 351.

LEWIS, P. J., delivered the opinion of the court.

The petition states, in effect, that in January, 1871, the
plaintiffs were owners of the steamboat T. L. McGill, and,
common carriers, the defendant being at the same time a
common carrier by railway between the city of St. Louis
and Belmont, on the Mississippi River; that the McGill
being at Belmont, with a cargo from New Orleans for St.
Louis, it was agreed between the parties that the defend-
ant would there receive and transport said cargo to its
destination, and would also carry from St. Louis to Bel-
mont about eight hundred tons of freight, to be shipped
on the McGill for sundry points on the river south of
Belmont; that for the upward transportation there was to
be an equal division between plaintiffs and defendant of the
freight-money, all of which was to be first collected by de-
fendant; that for the downward transportation a scale of
through rates was agreed upon, which rates were to be
divided between the parties in certain ratios then fixed, and
applied to the various articles of freight; the downward
freights for the whole trip were to be first collected by the
plaintiffs, and the defendant's interest therein was made de-
pendent upon the fact of such collections; that the upward
transportation having been completed, and the downward
cargo having been received by the McGill, the agents
of the parties, respectively, entered into a computation of
the probable results of the joint enterprise, assuming that
all the freights, both ways, would be realized; that it was

thus found that the plaintiffs would collect $2,562 more than their share of the entire proceeds; whereupon the plaintiffs' agent, in excess of the authority vested in him, and without the knowledge or consent of the plaintiffs, drew a sight draft upon plaintiffs' local agents in New Orleans, in favor of defendant, for the said sum of $2,562, and delivered said draft to defendant, which afterwards collected the same; that, while making her downward trip, the steamboat was, with all her cargo, destroyed by fire, so that nothing was ever collected for the freights thus to be earned. The petition further states that the defendant collected for the upward freights the sum of $3,000, whereof the plaintiffs were entitled to one-half; that defendant has paid them $500 on that account, but refuses to account for or pay the remainder; that plaintiffs have demanded of defendant a settlement and division according to the terms of their agreement, but defendant refuses to so settle or divide, or to restore to plaintiffs the amount of the draft so erroneously drawn and paid. The prayer of the petition is, that the defendant "may be ordered and adjudged to come to an account touching said matter; and that, in case a balance should be found in favor of said plaintiffs, a judgment may be rendered therefor against the defendant in the sum of $3,562, with interest and costs, and for all further relief."

The answer denies in detail all the terms of the alleged agreement as described in the petition. It admits the facts of the transportation both ways as stated, and the collection by defendant of the upward freights, but without stating their amount. It charges that the transportation from St. Louis to Belmont was done at the request of plaintiffs, and on their account, whereby the plaintiffs became indebted to defendant in the sum of $4,200. It admits that there was an accounting and settling between the parties, by their respective agents, and avers that the same was final and conclusive, having no reference to the possibilities of future

collections, or to any contingencies whatsoever. It denies that the settlement was based upon a joint undertaking for through transportation, or that there was any joint undertaking or enterprise whatever. It admits the making, delivery, and payment of the draft for $2,562, but denies that the plaintiffs' agent exceeded his authority therein, or that any feature of the transaction was without the knowledge or consent of plaintiffs; and alleges that the draft was for a payment *pro tanto* of plaintiffs' said indebtedness of $4,200 to defendant. It denies that the upward freights amounted to $3,000, or that the plaintiffs have not received their full share thereof; and admits that defendant has refused to account, because there was never any common undertaking for which an accounting should be had.

The issues were tried by a jury, who rendered a verdict of $4,608 for the plaintiffs. Upon an intimation from the court, the plaintiffs remitted $530, and judgment was made final for $4,078.

The defendant insists that there was error in the submission of the whole cause to the jury, and the verdict for an amount in damages; that, under the pleadings, the only issue properly submitted was, whether there was or was not a joint undertaking between the parties, as alleged in the petition; that, upon a finding for the plaintiffs on this issue, the further trial of the cause should have been by the court, or upon a reference for the taking of an account.

It may be conceded, for present purposes, that the agreement as described in the petition created a partnership. Each of the parties was to collect certain proceeds of the joint undertaking, and the entire receipts were to be shared upon a basis fixed in the agreement. So far, any claim preferred by one against the other for a share of proceeds unfairly withheld would be a proper subject for the taking of an account, to ascertain the various items of receipt and disbursement by either partner, to compare them together, and strike the proper balance. But if the parties them-

selves have already cast up the items and agreed upon the state of the account, and upon the resulting balance either way, there is no further account to be taken, unless upon a suggestion of fraud, mistake, or omission, operating to falsify their conclusion. No court can lawfully interfere with a result fairly settled by the parties, upon their own free, deliberate, and fully advised computation.

In this case, the pleadings agree that the parties, by their respective authorized agents, accounted together upon all the transactions and their results, whether prospective or accomplished, of the concurrent undertakings. On the one hand, it is asserted that the settlement referred to a joint enterprise whose ultimate results, not consummated, were assumed for that occasion. On the other, it is affirmed that there was only a settlement of the individual and mutual obligations of the parties, growing out of their several undertakings for each other. But each party declares, in effect, that, as to all the items which should have been considered in the account, it was full, fair, and complete. Neither questions the accuracy of the balance ascertained. The whole controversy is as to whether, by the original agreement, the plaintiffs were required to liquidate this balance under the disastrous circumstances which followed.

The case stands thus: Plaintiffs allege a joint undertaking for transportation of freights, over a continuous route, from St. Louis to New Orleans. From this it would result that, if no proceeds accrued, neither party would receive any thing. The payment, therefore, by plaintiffs' agent to defendant, through the draft for $2,562, — even if the agent had authority to make it, which is denied, — was a mere advance by one partner to another on account of profits which both expected would be realized. But when it turned out that no such profits could accrue, the partner advancing was entitled to have his money refunded. The defendant, denying the joint undertaking, negatives also its alleged consequences. Here is a simple issue of fact, involving no

items of account either way. The defendant is liable to the plaintiffs for the amount so advanced, or for nothing. If there be no common-law recovery of a specific sum of money erroneously paid to the defendant, there can be no recovery at all. This view is alike applicable to the plaintiffs' claim for one-half the proceeds of the upward freights. The petition shows that these freights were included in the settlement. It charges that they amounted to $3,000 ; so that it was, in effect, agreed between the parties that the plaintiffs were entitled to the specific sum of $1,500 on that account. The prayer in the petition cannot be considered as modifying the character of the claim arising upon the facts stated. *Whitmore* v. *Yeager*, 3 Mo. App. 582.

Such being the effect of the petition, we cannot perceive that it presents a case requiring a trial by the court exclusively, or by a referee. In the common-law practice, the two demands of the plaintiffs — one on account of their payment of the alleged erroneous draft, and the other for their share in the upward freights collected — would have been sustainable under the common counts for " money had and received " and " account stated." These counts were always appropriate between partners who had settled their accounts and struck a balance due from one partner to the other. True, the present is not, as to both the demands asserted, a suit to recover such balance. But there is here quite as little reason for readjusting accounts which the parties themselves have already adjusted.

Defendant objects that there was no proof on the trial of any authority in the contracting agent to bind the defendant in such an agreement as the petition describes. The defendant introduced as a witness its agent who had made the contract, for the purpose of proving what the contract really was, and thus to hold the plaintiffs to its terms. It would be monstrous if the defendant could then be heard to deny that the agent was authorized to make any contract whatever. It is admitted that he was "general

freight agent,'' and had authority to fix rates and contract for carriage on defendant's railway. No reason is shown why he might not, under these powers, agree that his principal should be compensated for its carriage by a *pro rata* on through transportation in connection with another carrier.

There was a direct conflict in the testimony as to whether the contract was for a through transportation downward on joint account, or whether the interest of the defendant was to cease with its delivery of the freights at Belmont. An instruction given for the plaintiffs placed this vital issue as fairly as possible before the jury. It also submitted to them the question whether the plaintiffs' agent had exceeded his authority in making the draft, touching which, also, there was conflicting testimony. The jury found for the plaintiffs on both of these issues, and their findings cannot here be reviewed.

The defendant proved, by the deposition of its agent who had made the settlement with the agent of plaintiffs, that the plaintiffs' share in the upward freights, as agreed upon and credited to them, amounted to $922.22. This fixed the sum due to plaintiffs on that account, without an inquiry into the items. This sum, as appears by computation from the amount of the verdict, was added by the jury to the amount of the draft, and interest on the total was calculated up to the date of the trial. They thus failed to allow the defendant credit for the $500 admitted in the petition to have been paid. The error was corrected by the plaintiffs' *remittitur* of $530, which properly included interest on the payment for five years. The amount of the judgment then entered was precisely such as the jury's findings on the material issues seemed to necessitate. It is manifest that if, in the accounting and settlement, the plaintiffs were credited with this sum of $922.22, and assuming the collection of the downward freights, there yet appeared against them a balance, for which the draft was given, then, upon

the discovery that no downward freights could be earned, this would remit the parties to their respective shares in the upward freights, with nothing more. The plaintiffs would then be entitled to receive their share in full, together with the money improperly paid on the draft.

The defendant offered an instruction throwing the burden of proof on the plaintiffs, and telling the jury, among other things, that unless " the defendant agreed to await payment of the amount of freight earned by it under said agreement until the entire freight upon said goods was collected by plaintiffs, they should, as to the existence of said contract or agreement, find for defendant." The court modified this by substituting the condition, that unless " the defendant agreed that the payment of the amount of freight earned by it under said agreement should depend upon the collection of the entire amount of freight which was to be charged for carrying the goods through to the points of destination, they should find for the defendant." This modification is complained of as error. There is no ground for the complaint. The issue presented by the defendant was immaterial. The condition, moreover, of the plaintiffs' recovery, as therein required, was satisfied by the testimony of Smith, the defendant's agent, who said, " The boat was to collect our freight, and pay it upon her return." The issue, as modified by the court, was material, and its hypothesis was more favorable to the defence, since there was a direct conflict in the testimony concerning it.

We find no error in the record. All the judges concurring, the judgment is affirmed.