JAMES S. WAHL v. F. J. CUNNINGHAM and CITIZENS' TRUST COMPANY and FARIS CUNNINGHAM, Administrators of Estate of JOHN A. CUNNINGHAM, Appellants.—56 S. W. (2d) 1052.

Court en Banc, December 31, 1932.

22

*Chas. G. Shepard* and *Moore & Fitch* for appellants.

24

*Ward & Reeves* for respondent.

28

ATWOOD, J.—This is a second appeal in an action commenced October 20, 1923, to recover damages for breach of certain contracts or agreements alleged to have been entered into by and between plaintiff, James S. Wahl, and the two original defendants, F. J. Cunningham and John A. Cunningham. Both trials were had on the same petition and our opinion on the first appeal is reported in Wahl v. Cunningham, 320 Mo. 57, 6 S. W. (2d) 576. At the last trial judgment was for plaintiff. The amount in dispute gives us jurisdiction of this appeal which has been twice heard by the court in banc.

The petition is in two counts. The first count alleges in substance, that for a long time prior to June 5, 1913, the Pemiscot County Bank was an organized banking corporation doing business in Caruthersville, Missouri; that its affairs were taken over by the State Bank Commissioner on June 5, 1913, and later the bank was placed in the hands of the Citizens' Trust Company as receiver, which company, at the time of the commencement of this action, had the affairs of the bank in court and the receivership had not been terminated; that the two original defendants, John A. Cunningham and F. J. Cunningham at the time and long prior to the failure of the bank were the President and Vice-President respectively of said bank, and; with other named parties, were its directors; that in the year 1913 plaintiff was elected as a member of the board of directors of said bank, and shortly thereafter, and before plaintiff had attended a board meeting as such director, it was ascertained by defendants that the bank was in financial distress, and that later it was in a failing condition and insolvent, because of the mismanagement, embezzlement, misuse and misappropriation of its funds by one of the bank's officers during the year 1912; that upon the discovery of the condition of said bank "defendants undertook to save the bank from a complete failure and to individually raise money to tide the bank over and keep it as a going concern, and, in order to do this, defendants were required to borrow individually large sums of money, which, in turn, they were using for the use and benefit of the bank,

and to prevent it from wholly failing, closing its doors and ceasing to operate as a bank; that thereupon they implored and sought the assistance and aid of this plaintiff to lend his credit to them and to help them secure such money, and thereupon advised with this plaintiff and informed him that they recognized he had been in no way connected with the operation of the bank and had not been a director and in no way liable or responsible for the operation of the bank during the time its losses occurred, and then and there promised and agreed with plaintiff that, if he would sign notes with them or individually would borrow money for them for the use and benefit of the bank aforesaid, and assist them in raising money to be used by said Pemiscot County Bank, they would individually hold him harmless from any loss thereby and would individually repay to him such sum or sums as he secured and furnished as aforesaid; that thereupon this plaintiff, relying upon said agreement, statements and representations of the defendants as aforesaid borrowed the sum of $15,000 on the — day of May, 1913, and turned said money over as directed by defendants for the use and benefit of said Pemiscot County Bank, together with $697.60 which he had on deposit in said Pemiscot County Bank, making a total of $15,697.60; that said defendants promised and agreed with the plaintiff that they would individually repay said money to him and the credit was given to the defendants, and they agreed that they would repay same to the plaintiff whenever the Pemiscot County Bank's affairs were straightened out and it was ascertained how much, if any, of the money so put up by plaintiff had not been repaid by the Pemiscot County Bank; that plaintiff relied upon said promises and representations and agreements as aforesaid, and borrowed and furnished said money as aforesaid; that thereafter, on the 5th day of June, 1913, said bank was taken over by the Bank Commissioner as aforesaid and since that time it has been in the process of liquidation; that plaintiff was forced to pay the note made by him in borrowing the $15,000 aforesaid, and has lost the use of the entire $15,697.60 from said —— day of ——, 1913, to this date,'' except certain payments made thereon, either by defendants or the Pemiscot County Bank, and credited thereon, leaving the balance of $10,429.13 of the principal and all interest unpaid on said note as aforesaid, together with $697.60, money loaned as aforesaid, with six per cent interest thereon; ''that defendants, at all times up until the —— day of March, 1923, promised and agreed to live up to their said contract as aforesaid, and to hold the plaintiff harmless and to pay the balance due for the money put up as aforesaid, whenever it was finally ascertained and determined the amount thereof after the final winding up of the Pemiscot County Bank; but plaintiff charges and avers that on the —— day of March, 1923, the defendants repudiated this agreement and advised this plaintiff that

they were not liable and would not pay said obligation at this time nor when the Pemiscot County Bank's affairs were finally wound up and the total amount ascertained to be due to this plaintiff.'' Plaintiff prayed judgment on this count for $11,626.75 and interest and costs.

The inducing allegations of the second count are similar to those of the first, and it is further alleged therein that defendants ''promised and agreed with the plaintiff that, if he would sign notes with them, or individually would borrow money for them for the use and benefit of the bank aforesaid, and assist them in raising money to be used by said Pemiscot County Bank, that they would individually hold him harmless from any loss thereby and would individually repay to him such sum or sums as he secured and furnished as aforesaid; that thereafter, on the 5th day of June, 1913, said Pemiscot County Bank was taken over by the Bank Commissioner of this State, it having been determined that it was wholly insolvent, and these defendants, in order to pay the individual depositors, or for some other reason unknown to this plaintiff, again sought the aid and assistance of this plaintiff to raise money for the use and benefit of said Pemiscot County Bank, and promised and agreed with the plaintiff herein that, if he would lend his credit and secure for them $10,000 for the purpose aforesaid, that they would hold him harmless and pay to him said sum, or whatever portion thereof that was not paid by the Pemiscot County Bank when the affairs of the bank were finally settled up and the exact amount determined; that, relying upon said promises and agreement, this plaintiff did, on the 19th day of June, 1913, make to the defendant F. J. Cunningham his note in the sum of $10,000, which said note the defendant F. J. Cunningham was to use in securing money for the purposes above mentioned, and did use said note for that purpose and secured thereon the sum of $10,000 under the promise and agreement with plaintiff as aforesaid; that thereafter said note was renewed from time to time and certain payments made thereon by the defendants, or out of the funds of the Pemiscot County Bank, until the 12th day of August, 1919, plaintiff paid the balance due upon said note, in the sum of $8,446.09; that same was paid upon the understanding, contract and agreement with these defendants that they would hold him harmless thereon and repay to him said sum at the time heretofore mentioned; but plaintiff charges and avers that said promises were still made by defendants and this agreement acknowledged and admitted by them up until the ——, day of March, 1923, and said defendants repudiated said agreement and refused to be bound thereby, and denied obligation thereon, and by reason of which said sum has now become due and he is entitled to recover the same from defendants.'' Plaintiff prayed judgment on this count for $8,446.09, together with 6 per cent interest thereon from August 12, 1919, and for costs.

Defendants went to trial on an amended answer the first count of which consisted of a general denial of the allegations contained in the first count of plaintiff's petition; plea of five and ten year statutes of limitations; plea of statute of frauds; plea of payment; and a counterclaim for one-third of $9,300 due in accordance with an alleged contract between plaintiff and defendants, who with A. C. Tindle and S. P. Reynolds constituted the board of directors of said Pemiscot County Bank, to share equally in payment of the balance of a $15,000 obligation of S. P. Reynolds who had become financially unable to pay same. The second count of this answer consisted of a general denial; plea of statutes of limitations; plea of statute of frauds; and counterclaim for one-third of $97,000, being the balance of $137,000 alleged to have been raised to buy unsecured deposit claims, pursuant to an alleged agreement between plaintiff and defendants, less any amounts paid on said claims in the liquidation of said bank.

Plaintiff's reply consisted of a general denial of all allegations and statements of new matter; plea of five-year statute of limitations against counterclaims set up in defendants' answer; and a plea that said claims cannot be maintained jointly by defendants against plaintiff.

The case was tried to a jury which returned a verdict for $15,070.08 in favor of plaintiff and against defendants on the first count, and for $12,204.59 in favor of plaintiff and against defendants on the second count of plaintiff's petition, and found the issues against defendants on their counterclaims. Final judgment was entered in accordance therewith.

Appealing from this judgment defendants present here twenty-eight separately numbered points in support of their assignment of errors. The first is that the cause was one in equity. The second and third points are that the case was at least one for a compulsory reference or a trial before the court without a jury. All these matters were brought to the attention of the trial court by defendants' motion for a reference or to try the cause without a jury, which motion was overruled.

The petition plainly states a law case in two counts for breach of alleged oral contracts or agreements. Appellants concede this much but insist that their answer converted the proceeding into an equity suit. It is true that defendants prayed for an accounting in each count of their answer, but where a petition states a cause of action at law for the recovery of a certain sum of money, the fact that the prayer of the petition is for an accounting and judgment, in case a balance should be found to exist in favor of plaintiff, does not modify the character of the claim arising on the facts alleged (Silver v. Ry. Co., 5 Mo. App. 381, affirmed in 72 Mo. 194), and the same is true

of an answer. The nature of the issue determines the character of the action. [Doe Run Lead Co. v. Maynard, 283 Mo. 646, 675, 223 S. W. 600.]

Looking to the body of the answer, we find nothing in the first count in the nature of an equitable defense or an equitable counterclaim. Certainly neither is to be found in the general denial or in the pleas of statutes of limitations and of frauds. The plea of payment is nothing more than a series of allegations to the effect that certain agreements were entered into by the parties whereby plaintiff's claim was wiped out and settled—specifications in support of defendants' general denial—while the counterclaim is based upon an alleged agreement between the parties and is for a sum certain. An examination of the second count discloses a similar situation. At the time the action was commenced the affairs of the bank were still in court and the receivership had not been terminated. It may be that defendants did not then know just how much had been paid on the unsecured deposit claims, but such payments were matters of proof just as in any other law case, and the issues presented by the answer and reply were legal and not equitable.

It also appears that defendants' contention, that on the pleadings the case was one for compulsory reference, is without merit. The statute invoked is Section 976, Revised Statutes 1929, which reads as follows:

"Where the parties do not so consent, the court may, upon the application of either, or of its own motion, direct a reference in the following cases: First, where the trial of an issue of fact shall require the examination of a long account on either side, in which case the referees may be directed to hear and decide the whole issue, or to report upon any specific question of fact involved therein; or, second, where the taking of an account shall be necessary for the information of the court, before judgment, or for carrying a judgment or order into effect; or, third, where a question of fact other than upon the pleadings shall arise upon motion or otherwise, in any stage of the action."

In actions at law not involving the examination of a long account, and not coming within the terms of this section, a reference cannot be made without the consent of a party; and in all actions at law not falling within the terms of this statute either party is entitled to a trial by jury as a matter of right. [Ice Co. v. Tamm, 138 Mo. 385, 390, 39 S. W. 791.] We also held in the Tamm case that the trial court's exercise of discretion in ordering or refusing to order a reference under this statute is reviewable, so the question before us is whether the trial court abused its discretion in refusing to order a reference in this case. This is determined by the nature and scope of the pleading relied on (McCormick v. City of St. Louis, 166 Mo.

315, 336, 65 S. W. 1038; Bank of Oak Ridge v. Duncan, 328 Mo. 182, 40 S. W. (2d) 656, 658), which in this case is that part of defendants' answer pleading payment and counterclaims.

With reference to the $15,000 alleged in the first count of plaintiff's petition to have been borrowed by him for the use and benefit of the Pemiscot County Bank at the request and on the promise of defendants to hold him harmless therefor, the first count of defendants' answer alleges that "plaintiff agreed to look solely and only to the Pemiscot County Bank for the payment of same." It further alleges that when said bank went into liquidation "plaintiff presented his claim in the sum of $15,000 against said bank, and it was allowed first by the liquidating agent in charge of liquidation of the affairs of said bank, and afterwards it was allowed by the receiver of said bank;" that no payments were made thereon by defendants, but plaintiff received dividends thereon from time to time as they were declared and paid by the bank's representatives, and that other payments in addition to those set out in plaintiff's petition were made to plaintiff on said claim by said bank; that in the spring of 1915 plaintiff, desiring to leave Caruthersville for an extended trip, "requested that he be relieved as co-maker on certain notes by plaintiff and defendants" and agreed with defendants that inasmuch as S. P. Reynolds would not be able to pay any part of the principal of three certain notes aggregating $44,700 he would assume and pay one-third thereof, or the principal sum of $14,900, defendants to assume and pay the remaining two-thirds; that a part of the indebtedness thus assumed by plaintiff was the $13,000 balance of the principal then remaining unpaid on the Lemp note, upon which plaintiff had raised the $15,000 referred to in the first count of his petition; that plaintiff also owed defendants $5,000 on a note dated December 7, 1914, together with interest accrued thereon to the amount of $194.45, and one-third of the interest accrued on one of the notes above referred to as assumed by defendants amounting to $157.33; that on May 31, 1915, it was agreed between plaintiff and defendants that after assumption by the parties of the notes as aforesaid plaintiff owed defendants the sum of $7,251.78, which amount he then and there paid them, and defendants thereafter paid in full the notes they had thus assumed and agreed to pay, and "did save the plaintiff free and harmless on account of said notes."

With reference to plaintiff's allegation that his deposit of $697.60 in the Pemiscot County Bank was used for the benefit of said bank under a similar agreement with defendants, defendants allege in the first count of their answer that this deposit in fact amounted to $1273.39, and that said sum was paid in full to plaintiff on July 12, 1913, out of funds contributed for the purpose of purchasing certain deposit claims against said bank, and plaintiff assigned his deposit

claim therefor to the four persons so contributing in accordance with agreements subsequently set out in the answer.

With reference to the counterclaim set up in the first count of their answer, defendants, in effect, simply allege that in the month of May, 1915, it became apparent that S. P. Reynolds would not be financially able to pay any part of the notes signed by him together with plaintiff and defendants for the purpose of raising the $60,000 deposited in the Pemiscot County Bank, and plaintiff agreed with defendants that upon final liquidation of said bank, after all dividends had been applied to the claim of $15,000 standing in Reynolds' name, the unpaid portion thereof would be paid in equal shares by plaintiff, John A. Cunningham and F. J. Cunningham; that the dividends paid on said claim amounted to $5,700 and that plaintiff was indebted to defendants for one-third of the remaining $9,300.

The substance of the allegations of the second count of defendants' answer, apart from the general denial and pleas of statutes of limitations and of frauds, is simply that plaintiff and defendants and Reynolds agreed to purchase deposit claims against said bank which purchases finally amounted to $137,000, that each of the four paid in $10,000 and defendants paid the remainder, and that in May, 1915, it appearing that Reynolds was financially unable to pay in any more, plaintiff agreed to pay defendants' one-third of the remainder of $97,000 which they had advanced.

Now what do all of defendants' foregoing allegations amount to but averments that plaintiff executed certain notes, filed certain claims against the bank and entered into certain agreements with defendants by reason of which plaintiff's claims have been paid and he now owes defendants certain sums of money? The gist of defendants' answer was the making of these agreements, which plaintiff denied. The issues made on plaintiff's reply extended to alleged payments on the notes and on claims filed against the bank, but even giving full effect to all the pleadings in the case they did not, as appellants claim, involve the examination of a long account between the parties within the meaning of the statute on compulsory reference as construed in Smith v. Ohio Millers' Mut. Fire Ins. Co., 6 S. W. (2d) 920, 927, 320 Mo. 146; Browning v. Ry., 284 Mo. 439, 224 S. W. 748; and Ice Co. v. Tamm, 138 Mo. 385, 39 S. W. 791. █ As said in the Smith case, supra: "A compulsory reference encroaches on the constitutional right of trial by jury, and ought not to be allowed unless the cause comes within the spirit as well as the letter of the statute." The trial court did not err in overruling defendants' motion for a reference or to try the cause without a jury.

█ Appellants' fourth point is that "plaintiff relied wholly on oral testimony to establish his claims of about eighteen years standing," and that "where such testimony is not corroborated it has little

weight.'' Equity cases and cases tried before the court without a jury are cited in support of this proposition, but they are without application because we have just held that this was a jury case. Hence, we cannot weigh the evidence. In 22 Corpus Juris, 289, section 318, cited by appellants it is said: ''It is, however, the province of the jury to weigh such evidence and give it the consideration to which it is entitled; and it may be sufficient to support a decision.'' This is not even like the equity cases cited by appellants where the proofs rested on fragmentary conversations overheard and vaguely testified to by third parties. Plaintiff testified to positive agreements made with him by defendants to hold him harmless on account of moneys borrowed by him for the use and benefit of the bank as alleged in both counts of his petition. On the former appeal we held that witness Tindle's testimony, which was admitted though all other evidence offered by plaintiff was excluded, tended ''to show the making of the alleged agreements by John A. Cunningham and F. J. Cunningham with plaintiff.'' [Wahl v. Cunningham, 320 Mo. 57, 6 S. W. (2d) 576.] Tindle's testimony was again admitted at the second trial and in the course of his deposition he said:

''In a general discussion of the board of directors J. A. Cunningham and F. J. Cunningham said they would try to borrow some money if all the members of the board of directors would indorse the notes with them. This was agreed to by all except Mr. Wahl, Mr. Wahl at that time saying that he did not feel that he should furnish funds or borrow funds on his own account or lend his signature or credit for the benefit of the Pemiscot County Bank for the reason that he had only recently become a member of the board of directors, and after considerable discussion J. A. Cunningham, F. J. Cunningham, S. P. Reynolds and myself agreed that he should be held harmless.

''J. A. Cunningham told Mr. Wahl at that meeting that if he would lend his assistance in borrowing money with the endorsement of the various directors on a note or notes that he would be held harmless for the payment of those notes.

''J. A. Cunningham told Wahl that he and Frank would guarantee him against loss for any money he might borrow or help to borrow for the benefit of the Pemiscot County Bank.

''He didn't want to become involved at all. Finally on further insistence by the different members of the board he agreed that if John and Frank would hold him harmless for borrowing money on his signing notes with the other members of the board of directors that he would assist them all he could in raising funds for the benefit of the bank.''

The above is clearly corroborative of plaintiff's testimony as to these alleged agreements, and, without objection on the part of defendants, this witness testified even more specifically in corroboration of plaintiff's testimony as to defendants' alleged agreements.

■ But appellants contend that this part of plaintiff's oral testimony is so clearly in conflict with certain written documents admitted in evidence that it should not be considered, and for that reason plaintiff made no case for the jury.

The first document urged as destructive of plaintiff's testimony in support of his first count is an assignment dated January 21, 1915, by plaintiff as vice-president of the Citizens' Trust Company, as liquidating agent, to the Citizens' Trust Company, as receiver, of all of the uncollected assets of the Pemiscot County Bank, wherein under the heading of "allowed claims" the following appeared:

"Deposit of James S. Wahl not credited to his personal account on the ledger, $15,000.00."

W. J. Peck, testifying for defendants, said this $15,000 was not found on the deposit ledger to credit of plaintiff, but that a record appeared in the journal; that this item of $15,000 represented the proceeds of the Lemp note and was deposited in the National Bank of Commerce in St. Louis, and that it wasn't to anybody's credit on the bank books of the Pemiscot County Bank. This is entirely consistent with plaintiff's oral testimony that when he obtained this $15,-000, it was turned over to defendants and deposited in this St. Louis bank to the credit of the Pemiscot County Bank, and the fact that it was subsequently treated as a deposit claim against the latter bank is not inconsistent with plaintiff's testimony that the money was procured and turned over to defendants for the use and benefit of the bank upon defendants' agreement to hold him harmless therefor.

It is also urged that plaintiff's admissions that he received dividends on this claim and applied them on the Lemp note are destructive of his testimony as to the alleged agreements. On the contrary, we think they are in line with the agreements pleaded and proved, and it was not improbable that he would help minimize defendants' losses if they were to hold him harmless on account of having procured this money for the use and benefit of the bank.

In this connection appellants also rely on a written assignment (referred to in their abstract as Plaintiff's Exhibit 3 but which respondent says in his supplemental abstract he never offered in evidence), dated May 12, 1914, from plaintiff to the Citizens' Trust Company purporting to cover a deposit of $12,300 due him from the Pemiscot County Bank and to be made for the purpose of securing any indebtedness due from him to said company, any balance derived from dividends to be paid to plaintiff or his creditors on any notes or debts made by him to take care of the depositors in the old bank. The Citizens' Trust Company was formed in June, 1913, and its stock subscribed as a part of the plan to liquidate the Pemiscot County Bank. Elsewhere in the evidence it appears that immediately after the formation of the trust company plaintiff executed and delivered

to defendant, F. J. Cunningham, his promissory note for $10,000, which was discounted by the trust company and the proceeds used along with other funds in the purchase of deposit claims, as alleged in the second count of plaintiff's petition. The fact that plaintiff subsequently assigned this deposit claim, referring to it as his own, to the trust company to secure this note does not destroy his testimony that defendants agreed to hold him harmless on account of the obligation of this $10,000 note and his $15,000 note to the Lemp Brewing Company. Neither are plaintiff's admissions that dividends were being paid on the Lemp note, which he testified was also signed by defendants, Tindle and Reynolds, open to like objection. In the state of the record before us it was for the jury to determine under all the evidence whether defendants' alleged agreements with plaintiff were original and independent undertakings and the filing of related claims in plaintiff's name and payment of dividends thereon were mere incidents resulting from said agreements.

Appellants also say that under plaintiff's second count no case was made for the jury because plaintiff's testimony as to defendants' agreement to hold him harmless on account of his participation in the purchase of deposit claims against the old bank is destroyed by the written contract between the Citizens' Trust Company and the Pemiscot County Bank, dated June 14, 1913, providing for the liquidation of the assets of the bank by the trust company, and by the written agreement entered into on the same date by plaintiff, defendants and S. P. Reynolds reciting their desire to pay in full and take an assignment of "numerous individual and private business corporation depositors which are unsecured in their deposits" in the old bank, and appointing the Citizens' Trust Company as their agent therefor. These documents are not inconsistent with plaintiff's testimony that defendants agreed to hold him harmless on account of any funds he might furnish in such undertaking. For the same purpose appellants urge minutes of the Citizens' Trust Company dated June 19, 1913, authorizing a loan of $40,000 upon a $10,000 note of each of said four parties. This also is entirely consistent with plaintiff's testimony that he was aiding in raising this money to pay off the depositors and that defendants had agreed to hold him harmless on account of obligations so incurred. Neither is plaintiff's written assignment, dated July 5, 1913, of his deposit of $1,273.39 to the same four parties open to like objection, nor the power of attorney executed by them to F. J. Cunningham authorizing him to assign as collateral to secure said four notes all of the assignments made by depositors of the old bank.

It is also urged that plaintiff made no case for the jury because the evidence showed that his alleged claims were barred by the statutes of limitations and the statute of frauds. On the former appeal we ruled against defendants' contention that plaintiff's peti-

38

tion showed upon its face that the causes of action there alleged were barred by these statutes. From what we have already said in this opinion it is apparent that whether plaintiff furnished the money in question primarily on the credit of the bank or of defendants was a hotly contested issue, but clearly one for the jury, and it was for that body to determine whether or not the facts gave rise to the defense of the statute of frauds. Also, the time for the performance of defendants' alleged agreement was determinative of the application of the statutes of limitations. Plaintiff's petition alleged that was to be "whenever the Pemiscot County Bank's affairs were straightened out and it was ascertained how much, if any, of the money so put up by the plaintiff had not been repaid by the Pemiscot County Bank." It was agreed that the Citizens' Trust Company, as receiver of the bank filed its final report in 1924 and was discharged in 1925. Plaintiff testified that defendants repudiated their agreements in 1923, and he commenced this action shortly thereafter. Upon a careful examination of the whole record we are satisfied that plaintiff's evidence in support of the allegation of his petition in this respect was sufficient to take that issue to the jury. Defendants' request for a directed verdict on both counts of the petition was properly denied.

Appellants' fifth point is that under the evidence plaintiff's claims were barred by the statute of frauds. We have just ruled otherwise as to this contention.

Appellants' sixth, seventh, eighth, ninth and eleventh points are mere statements of legal propositions not shown to be related to any errors alleged. Hence, they present nothing for our consideration.

Points X, XII and XIX all relate to appellants' contention that the court erred in overruling their request for a directed verdict and are determined by what we have already said.

Under point XIII appellants argue that the trial court erred in permitting plaintiff to answer certain inquiries. The record shows that on direct examination plaintiff said: "John Cunningham came to the phone and ask me———." Interrupting at this point his counsel said: "You needn't tell what he said, that would be incompetent." There was no objection to this testimony at the time nor was any motion subsequently made to strike it out. It does not appear that the witness ever testified as to anything said in the conversation. Later, he was asked: "Where did you go after you met Mr. Cunningham at the American Hotel, to the Lemp Brewery?" Thereupon, counsel for defendants moved that the question be stricken out for the reason that John Cunningham, one of the original defendants, was then dead and any testimony of this witness pertaining to any conversations or meetings he had with Cunningham alone was wholly incompetent, and that "the rule operates as to any meeting that has to do with any business transaction." The witness was permitted to

answer but neither this nor any subsequent answers purported to relate any part of any conversation, or to any controverted matter not otherwise shown without objection. It does not appear from the record before us that the court's ruling was prejudicial error.

Point XIV is that the court erred in excluding Defendants' Exhibits 23, 48, 49, 50 and 52. These exhibits were letters written by one of the defendants, copies of letters, and a statement made up shortly before the trial by one of defendants' witnesses. It does not appear that plaintiff was connected with them in any way or had ever seen them. The exhibits were obviously hearsay evidence, self-serving and incompetent.

Under point XV appellants urge that prejudicial error was committed in the cross-examination of S. P. Reynolds, but there appears to be no merit in this contention. The question was propounded and answered once before any objection was made. The court thereupon inquired: "Have you gotten the question?" The witness replied: "I think I can answer it." Counsel for defendants then objected to the form of the question on the ground that it had "a tendency to put in a conversation with Mr. Wahl with this witness when the substance of what they now seek to prove can be asked this witness, the direct question as to whether or not the Cunninghams had made such a statement." The witness then answered much as if the question had been asked in the form suggested by counsel for defendants.

Under points XVI and XVII counsel for appellants charge prejudicial error in permitting counsel for plaintiff to introduce in evidence papers purporting to be defendants' answer, amended answer, second amended answer, and third amended answer filed in this cause, and to read therefrom in their closing argument, the grounds of objection being that these papers had not been properly identified or previously read to the jury. Defendants went to trial the first time on their original answer, and the second time on what appellants say was the fourth amended answer, although respondent refers to it as their sixth amended answer. The record shows that some of the amended answers were stricken out on motion of plaintiff. However this may be, all answers filed prior to the one on which the case was submitted were thereby superseded as factors in making up the issues, but such pleadings "are admissible in evidence when they contain admissions or statements of facts against the interest of the party in whose pleadings they appear." [Walser v. Wear, 141 Mo. 443, 464, 42 S. W. 928; Meriwether v. Publishing Co., 224 Mo. 617, 626, 123 S. W. 1100; Ettenson v. Railroad, 248 Mo. 395, 415, 154 S. W. 785; Andrus v. Business Men's Assn., 283 Mo. 442, 445, 223 S. W. 70.] They were still files in the case and remained a part of the record, though it is generally held that such cannot be read or

40

commented on unless formally introduced in evidence. [22 C. J. 799, sec. 910; 10 R. C. L. 1118, sec. 325; Ann. Cas. 1913A, 1135; Shipley v. Reasoner, 87 Iowa, 555; Leach v. Hill, 97 Iowa, 81; Williams v. Williams, 115 Iowa, 520; Folger v. Boyington, 67 Wis. 447.]

There is no contention in the instant case that the answers were not formally introduced in evidence. Though purporting to be original documents and bearing title of the cause then on trial as well as filing dates and the signatures of counsel for defendants in said cause and admitted in evidence by the judge trying the cause, it is said they were not properly identified and for that reason the judgment should be reversed. Counsel cite no authorities except Railroad v. Wyatt, 223 Mo. 347, 352, 122 S. W. 688; and Perringer v. Raub, 300 Mo. 535, 539, 254 S. W. 703. These and other cases hold that a bill of exceptions does not prove itself and proof of its existence must appear in the record proper on appeal. Such holding, however, does not rule the point here raised. This is a case where a part of the trial court's own record in the case then on trial was introduced and admitted in evidence. In a case on trial in any court its records are actually or constructively before the judge. [23 C. J. 110, sec. 1818bb.] A court has knowledge of the genuineness of its own records (15 R. C. L. 1113, sec. 44; 89 Am. Dec. 688; State v. Schilling, 14 Iowa, 455, 459; Robinson v. Brown et al., 82 Ill. 279, 281), and such may be accepted by the court as establishing their own existence. [23 C. J. 110, n. 97, and cases cited.] Having such knowledge it was competent for the trial judge to determine the identity and genuineness of the papers offered in evidence, and he should not be convicted of reversible error for admitting them on his own inspection.

When counsel for plaintiff was making the closing argument counsel for defendants complained that only parts of these answers were being read to the jury and that no part of the answers had been previously read to the jury. The abstracts filed are conflicting as to whether or not the answers were read. When this objection was made the court said: ''Well, the answers are here, we can read them if we have to.'' Defendants' counsel then excepted ''to the ruling of the court in not requiring him to read the whole clause of the answer referred to.'' We are not advised as to the parts read and those claimed to have been omitted and have no right to conjecture that such reading constituted prejudicial error.

Under Point XVIII counsel for appellants say that instructions 1 and 2, given at the request of plaintiff, were erroneous. However, they do not indicate in what respect these instructions were erroneous further than to say that they were ''commentaries upon the evidence and suggestive as to the facts to be found, and assume facts not in evidence.'' This criticism is too general to require attention, but we have examined the instructions and do not find them open to these objections.

Under Points XIX, XXII, XXIII and XXIV it is urged that the court erred in refusing to give instructions B and E as requested by defendants, and in giving them as modified by the court. These instructions as requested were as follows:

"Instruction No. B.

"The court instructs the jury that if the jury shall find and believe from the evidence in this case that there was an agreement between James S. Wahl, J. A. Cunningham, F. J. Cunningham and S. P. Reynolds to raise funds for the use of Pemiscot County Bank; and if you further believe that under said agreement said four persons executed the note described in evidence payable to W. J. Lemp Brewing Company in the sum of $15,000. together with other notes; and if you further believe that said sum of $15,000. was delivered to Pemiscot County Bank for its use and benefit together with other sums raised with the notes by said four persons; and if you shall further find that said sum of $15,000. was allowed as a claim in favor of James S. Wahl against Pemiscot County Bank by the liquidating agent in charge of and liquidating the assets of Pemiscot County Bank; and if you further find that said liquidating agents paid dividends on said claim to James S. Wahl personally and that he received said dividends; and if you further find that said sum of $15,000. was allowed as a claim against Pemiscot County Bank in favor of James S. Wahl by Citizens Trust Company as receiver for said Pemiscot County Bank; and if you further find that said receiver paid dividends out of the assets of Pemiscot County Bank to said James S. Wahl personally and he received said dividends; and if you further find that said James S. Wahl looked to said Pemiscot County Bank for the repayment of said sum of $15,000. at the time said sum of $15,000. was deposited for the use of Pemiscot County Bank, then James S. Wahl cannot recover on the first count of his petition and your verdict thereon must be in favor of the defendants."

"Instruction No. E.

"The court instructs the jury: that if the jury shall believe and find from the evidence that Pemiscot County Bank closed its doors in June, 1913; and if the jury shall further find and believe from the evidence that James S. Wahl, J. A. Cunningham, F. J. Cunningham and S. P. Reynolds were directors of said Pemiscot County Bank at the time it closed its doors; and if the jury shall further find and believe from the evidence that James S. Wahl, J. A. Cunningham, F. J. Cunningham, and S. P. Reynolds believed that the assets of Pemiscot County Bank were sufficient to pay all of its claims and if the jury further believes from the evidence that the said four persons entered into an agreement whereby they agreed to raise funds suf-

ficient to pay all of the unsecured depositors in Pemiscot County Bank; and if you further find from the evidence that said four persons agreed between themselves that they would borrow money for the purpose of enabling said four persons to purchase the deposit claims of unsecured depositors in said bank and that said four persons would receive in payment of the money so raised dividends to be paid out by the liquidation of the Pemiscot County Bank; and if the jury shall further find and believe from the evidence that the $10,000 note described in the evidence and mentioned in the second count of plaintiff's petition was one of the notes that was used for the purpose of raising money with which said four persons agreed to purchase and receive assignments of unsecured claims of depositors in said Pemiscot County Bank, then the plaintiff cannot recover on said claim and your verdict must be for the defendants.''

The modification of Instruction B consisted in adding thereto, ''unless you find defendants agreed to hold plaintiff harmless, as instructed in No. 1.'' The modification of Instruction E consisted in adding thereto, ''unless you find defendants agreed to hold plaintiff harmless, as instructed in No. 2.'' Appellants' complaint is that in refusing to give these instructions as requested and in giving them as modified the court failed to submit the question of the statute of frauds to the jury as the same arose under the evidence under both counts of plaintiff's petition.

Plaintiff's Instruction No. 1 covered the whole case as to his first count, and No. 2 as to his second count. Appellants are in error when they say that these instructions contain no elements involved in the statute of frauds and authorize a finding without reference thereto. Instruction No. 1, among the prerequisites to a finding for plaintiff on the first count, required the jury to find that ''J. A. Cunningham and F. J. Cunningham then and there promised and agreed with plaintiff that if he would sign notes with them or individually would borrow money for them for the use and benefit of said bank, and would assist them in raising money to be used by them for said bank, that they would individually hold him harmless from any loss thereby and would individually repay said money so secured or furnished by him;'' and Instruction No. 2, among the prerequisites to a finding for plaintiff on the second count, required the jury to find that defendants ''sought the aid and assistance of this plaintiff to raise money for that purpose and promised and agreed with the plaintiff that if he would lend to them his credit and secure for them $10,000 for the purpose aforesaid that they would hold him harmless and repay to him such sum or whatever portion thereof that was not paid by the Pemiscot County Bank when its affairs were finally settled up and the exact amount determined.'' Under the doctrine elaborately discussed in our opinion on the first appeal (p. 75), application of

the statute of frauds as to the first count depended upon whether or not "the implied obligation or duty of the bank to reimburse plaintiff was, in any view, but a mere legal incident resulting from the contracts or agreements alleged to have been made between plaintiff and defendants." Instruction B as offered entirely ignored this pivotal proposition and authorized a finding for defendants on the first count if the jury found that plaintiff looked in any degree to the bank for repayment of said sum of $15,000. Also, Instruction E as offered tended to obscure the fact that the alleged agreement underlying the second count contemplated the application of dividends as far as they would go toward payment of the $10,000 furnished to aid defendants in purchasing deposit claims against the old bank. Without the court's modifications these instructions would have been misleading and erroneous, and with them defendants were not denied submission of their defense of the statute of frauds.

Point XXI is that "the verdict was excessive," but no further reference is made thereto and it will be treated as abandoned.

■ Under Point XXV it is insisted that plaintiff testified that defendants agreed to hold him harmless by paying the Lemp note if the Pemiscot County Bank failed to pay it when due, which was six months after its date, and that under this admission the claim was barred by the statutes of limitations. In the early part of his examination plaintiff's testimony lends some color to this contention but before the examination was concluded he testified that defendants agreed that when the affairs of the bank were finally wound up they would hold him harmless. The jury saw and heard the witness testify and was competent to draw its own conclusions therefrom.

■ Point XXVI is that the petition fails to show that a consideration passed from plaintiff to defendants for any alleged extension or renewal of the contract sued on, that no evidence disclosed such a consideration or promise, and the demurrer should have been sustained. On the former appeal the petition was held good against all contentions made and no demurrer to the petition was thereafter filed. Nor does it appear that any such attack was ever made on the petition or the evidence in the motion for a new trial, or urged when the appeal was last heard by this court.

Under Point XXVII appellants say that if on a second trial, after first appeal, the issues and the evidence are materially different from those in the first trial, the first appeal does not become the law of the case, and has no binding force, unless it be upon a fact directly involved in both cases. The accuracy of this statement of law need not be challenged, but upon a careful review of the issues on this appeal we fail to discern its applicability.

Appellants' last point is that rulings on a former appeal may be set aside if erroneous. Again, we do not question this statement of

the law but find no reason for its application to the matters here in issue.

No reversible error appearing in the assignments urged, the judgment is affirmed. All concur.